UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:

| | |
|---|---|
| UNITED STATES,<br><br>           Plaintiff,<br><br>           v.<br><br>FOREST GROUP USA INC.; DRAPERY HARDWARE USA INC., d/b/a FOREST DRAPERY HARDWARE,<br><br>           Defendants. | **JURY TRIAL DEMANDED**<br><br>Court No. 24-00117 |

## **COMPLAINT**

Plaintiff, the United States of America, through its undersigned attorneys, alleges as follows:

1. The United States brings this action pursuant to 19 U.S.C. § 1592 to recover unpaid antidumping ("AD") and countervailing duties ("CVD") and a civil monetary penalty owed by the defendants.

2. For the unpaid duties, the United States seeks to recover $1,115,643.29 in unpaid AD and CVD duties for Entry Nos. DSV-30073115 and DSV-30099706, plus pre-liquidation interest pursuant to 19 U.S.C. § 1677g, and additional pre- and post-judgment interest, including but not limited to interest pursuant to 19 U.S.C. § 1505(d).

3. For the civil monetary penalty, the United States seeks to recover $2,012,444.00, for violations of 19 U.S.C. § 1592(a), at a culpability level of negligence; and such other and further relief as may be just and appropriate.

4. This court has jurisdiction under 28 U.S.C. § 1582(1) and (3).

FACTS

5.      Defendant Forest Group USA Inc. ("Forest Group") is or was located at 2500 Donn Drive, Cartersville, Georgia 30120.

6.      Defendant Drapery Hardware USA Inc. d/b/a Forest Drapery Hardware ("Forest Drapery Hardware") is located at 2500 Donn Drive, Cartersville, Georgia 30120.

7.      On April 28, 1995, Forest Group was incorporated pursuant to the laws of the State of Georgia.

8.      At all times relevant to the matters described in this complaint, Forest Group was an importer of aluminum extrusions in the form of aluminum drapery hardware.

The Entry Of Merchandise Into The United States

9.      Importers of record ("importers") must exercise reasonable care in entering merchandise into the United States.  19 U.S.C. § 1481(a)(1).

10.     When entering merchandise into the United States, importers must file with CBP "the declared value, classification and rate of duty applicable to the merchandise, and such other documentation or, pursuant to an electronic data interchange system, such other information as is necessary to enable [CBP] to … properly assess duties on the merchandise[.]"  19 U.S.C. § 1484(a)(1)(B)(i).

11.     Importers must disclose on such entry documentation—an "entry summary"—whether its merchandise is subject to antidumping or countervailing duty orders issued by the Department of Commerce ("Commerce") and include the case numbers of such orders.  *See* 19 C.F.R. § 141.61(c); 19 U.S.C. §§ 1484, 1671h, 1673g; CBP Form 7501: Entry Summary with Continuation Sheets, available at https://www.cbp.gov/document/forms/form-7501-entry-

summary-continuation-sheets; ACE Entry Summary Instructions, available at https://www.cbp.gov/document/guides/ace-entry-summary-instructions.

The Antidumping and Countervailing Duty Orders
On Aluminum Extrusions From The People's Republic of China

12. On April 27, 2010, Commerce initiated AD and CVD investigations concerning aluminum extrusions from the People's Republic of China ("China"). *See Aluminum Extrusions from the People's Republic of China: Initiation of Antidumping Duty Investigation*, 75 Fed. Reg. 22,109 (Dep't of Commerce Apr. 27, 2010); *See Aluminum Extrusions from the People's Republic of China: Initiation of Countervailing Duty Investigation*, 75 Fed. Reg. 22,114 (Dep't of Commerce Apr. 27, 2010).

13. On May 26, 2011, Commerce issued final determinations that resulted in AD and CVD orders covering aluminum extrusions from China. *See Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (Dep't of Commerce May 26, 2011) ("ADD Order"); *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Dep't of Commerce May 26, 2011) ("CVD Order") (collectively, the "AD/CVD Orders").

14. The case number assigned to the ADD Order is A-570-967.

15. The case number assigned to the CVD Order is C-570-968.

16. The AD/CVD Orders covered "aluminum extrusions which are shapes and forms, produced by an extrusion process, made from aluminum alloys having metallic elements corresponding to the alloy series designations published by The Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body equivalents)." *ADD Order*, 76 Fed. Reg. at 30,650–51; *CVD Order*, 76 Fed. Reg. at 30,653–54.

17. During the relevant period, from September 22, 2011 through March 1, 2012, the "[China]-wide Entity" or "all others" cash deposit and liquidation rate for goods covered by the ADD Order was 33.28 percent.

18. During the relevant period, from September 22, 2011 through March 1, 2012, the "all others" cash deposit and liquidation rate for goods covered by the CVD Order was 374.15 percent.

The Subject Entries

19. On September 22, 2011, Forest Group entered aluminum extrusions with a country of origin of China into the United States under cover of Entry No. DSV-30073115 and, on March 1, 2012, Forest Group entered aluminum extrusions with a country of origin of China into the United States under cover of Entry No. DSV-30099706 (the "Entries").

20. The aluminum extrusions imported by Forest Group in its Entries were covered by the ADD Order and were subject to the "all others" cash deposit and liquidation rate of 33.28 percent.

21. The aluminum extrusions imported by Forest Group in its Entries were covered by the CVD Order and were subject to the "all others" cash deposit and liquidation rate of 374.15 percent.

22. Forest Group did not deposit any antidumping or countervailing duties for the aluminum extrusions it imported in its Entries.

23. Forest Group did not identify on the entry summaries for the Entries that Forest Group's imported aluminum extrusions were subject to any antidumping or countervailing duty orders—*i.e.*, Forest Group did not designate them as type "03" entries.

24. Forest Group did not include AD case number A-570-967 or CVD case number C-570-968 on the entry summaries for the Entries.

25. Instead, Forest Group identified on the entry summaries for the Entries that Forest Group's imported aluminum extrusions were *not* subject to any antidumping or countervailing duty orders—*i.e.*, that they were type "01" consumption entries.

26. Forest Group claimed on the entry summaries for the Entries that Forest Group's imported aluminum extrusions were subject to a duty rate of only 1.5 percent.

27. As a result of Forest Group's identifying on the entry summaries for the Entries that the imported aluminum extrusions were *not* subject to the AD/CVD Orders when they were, in fact, subject to the AD/CVD Orders, Forest Group paid less in duties and fees than it would have paid, and the United States was deprived of lawful duties, taxes, and fees in the amount of approximately $1,115,643.29.

28. CBP has exhausted all administrative remedies by issuing pre-penalty and penalty notices to Forest Group seeking the restoration of these lawful duties, taxes, and fees, and assessing a penalty in the amount of $2,012,444.00, for Forest Group's negligent violations of 19 U.S.C. § 1592(a).

29. To date, Forest Group has not paid any amount of the duties, taxes, fees, or penalty owing.

<u>The Transfer of Operations and Assets to Forest Drapery Hardware</u>

30. According to Forest Group's president, by 2012, Forest Group "learned for the first time that [CBP] would likely penalize Forest Group for a tariff violation." Declaration of Steven Wright, Dkt. No. 69-3 at ¶ 5, *Knieper v. Forest Group USA, Inc.*, Civil Action No. 15-00222 (N.D. Ga. Nov. 27, 2017).

31. "Forest Group and Bospart Holland [B.V.]"—the Dutch parent company that formed Forest Group, *id.* ¶ 2—"believed that the penalty would be far too large for Forest Group to pay and thus destroy Forest Group[.]" *Id.*

32. Thus, "[i]n 2013, Bospart [Holland B.V.] decided on a strategy for dealing with the ongoing tariff issue and for improving marketing for some of the products that Forest Group sold." *Id.* at ¶ 6.

33. Pursuant to this "strategy," on March 8, 2013, Forest Drapery Hardware was incorporated in what Forest Group described to its customers as only a "name change."

34. At the time of Forest Drapery Hardware's incorporation, Forest Drapery Hardware and Forest Group were engaged in the same business.

35. Since its incorporation, Forest Drapery Hardware has maintained the same corporate address as Forest Group or Forest Group's officers.

36. From Forest Drapery Hardware's incorporation in 2013 through Forest Group's dissolution in 2023, Forest Group and Forest Drapery Hardware shared the same President, CEO, CFO, and Secretary: Steven Wright.

37. Forest Group began to shift its operations and divert its assets to Forest Drapery Hardware immediately after Forest Drapery Hardware's incorporation.

38. For example, millions in assets were diverted from Forest Group to Forest Drapery Hardware through "service fee agreements" that were signed by Steven Wright on behalf of both companies. *See* Dkt. Nos. 110-4, 110-6, and 110-8, *Knieper v. Forest Group USA, Inc.*, Civil Action No. 15-00222 (N.D. Ga. Nov. 27, 2017).

39. By 2015, Forest Group was left with liability in excess of its assets, and had no real property, equipment, or machinery, and almost no earnings or sales activity; Forest Drapery

6

Hardware, on the other hand, recorded millions of dollars in sales and assets by the same year. *Compare* Forest Group USA, Inc. Financial Statements – December 31, 2016 and 2015, *with* Drapery Hardware USA, Inc. Financial Statements – December 31, 2016 and 2015.

40. Substantially all of Forest Group's assets were transferred to Forest Drapery Hardware between 2013 and 2015. *See, e.g.*, *id.*; Forest Group USA, Inc. Financial Statements – December 31, 2014 and 2013.

41. On November 30, 2015, Bospart Holland B.V., as majority shareholder of Forest Group, voted to dissolve Forest Group.

42. Forest Group was subsequently dissolved on June 7, 2023.

43. Forest Drapery Hardware continues to use the identity, reputation, goodwill, and other intangible assets of Forest Group.

44. For example, Forest Drapery Hardware advertises on its website that "[t]hirty years ago it started with a flexible aluminum system" and has "[t]hree decades of experience"—despite having been incorporated in 2013. Forest Drapery Hardware, *Our Story*: *Three Decades of Experience*, https://www.forestdh.com/our-story (last visited July 10, 2024).

45. As a direct result of transferring substantially all of its assets to Forest Drapery Hardware and then dissolving, Forest Group now lacks assets sufficient to pay what it owes the United States.

COUNT ONE
(Forest Group USA Inc.)

46. The allegations contained in paragraphs 1 through 45 are restated and incorporated herein by reference.

47. Section 1592 of Title 19, United States Code, imposes civil penalties for material false statements, acts, or omissions made in connection with the introduction or entry of merchandise.

48. Forest Group, exercising reasonable care, should have known that its Entries of aluminum extrusions were subject to the AD/CVD Orders.

49. Forest Group, however, falsely stated in the entry summaries for the Entries that its imported aluminum extrusions were not subject to the AD/CVD Orders by identifying the Entries as type "01" consumption entries, rather than type "03" entries subject to an antidumping duty or countervailing duty order, and by failing to state the case numbers of the AD/CVD Orders and the rate and amount of applicable antidumping and countervailing duties due.

50. Forest Group entered or introduced the imported aluminum extrusions into the commerce of the United States by means of a document or electronically transmitted data or information, written or oral statement, or act which was material and false, or by means of an omission which was material. *See* 19 U.S.C. § 1592(a).

51. The false statements, acts, or omissions described above were material because they had "the natural tendency to influence," or were "capable of influencing," determinations made by CBP concerning Forest Group's liability for duties. 19 C.F.R. Pt. 171, App. B(B).

52. The material false statements, acts, or omissions described above constitute negligent violations of 19 U.S.C. § 1592(a).

53. As a result of its negligent violations of 19 U.S.C. § 1592(a), Forest Group is liable for lost duties, taxes, and fees in the amount of $1,115,643.29 pursuant to 19 U.S.C. § 1592(d), plus pre-liquidation interest pursuant to 19 U.S.C. § 1677g, and additional pre- and post-judgment interest, including but not limited to interest pursuant to 19 U.S.C. § 1505(d).

54. Also with respect to the liability for unpaid duties, CBP's assessment of AD and CVD duties and pre-liquidation interest pursuant to 19 U.S.C. § 1677g against Forest Group in connection with Entry No. DSV-30099706 was not protested within 180 days of that entry's liquidation and, consequently, such assessment is therefore final and conclusive pursuant to 19 U.S.C. § 1514(a). Specifically, CBP assessed $749,220.61 in AD and CVD duties and section 1677g interest in connection with Entry No. DSV-30099706.

55. As a result of its negligent violations of 19 U.S.C. § 1592(a), Forest Group is liable for a civil penalty, pursuant to 19 U.S.C. § 1592(c)(3)(A)(i), in the amount of approximately $2,012,444.00, which represents the domestic value of the imported aluminum extrusions contained in the Entries.

COUNT TWO
(Drapery Hardware USA Inc. d/b/a Forest Drapery Hardware)

56. The allegations contained in paragraphs 1 through 55 are restated and incorporated herein by reference.

57. Federal common law provides "that a successor entity may be responsible for its predecessor's debts when '(1) there is an express or implied agreement to assume past debts, (2) the change in corporate form constitutes a de facto merger, (3) the successor is a mere continuation of its predecessor, or (4) the change in corporate form was motivated by the intent to defraud creditors.'" *United States v. Sterling Footwear, Inc.*, 279 F. Supp. 3d 1113, 1140 (Ct. Int'l Trade 2017) (quoting *United States v. Ataka Am., Inc.*, 826 F. Supp. 495, 498 (Ct. Int'l Trade 1993)). Additionally, "[a] corporation may be an *alter ego* or business conduit of another and its separate corporate existence will not be recognized where it is so organized and controlled and its business conducted in such a manner as to make it merely an agency or

instrumentality of the other corporation." *United States v. Inn Foods, Inc.*, 515 F. Supp. 2d 1347, 1356 (Ct. Int'l Trade 2007) (quotation omitted), *aff'd*, 560 F.3d 1338 (Fed. Cir. 2009).

58. At the time of its incorporation, Forest Drapery Hardware shared the same management, address, line of business, and "Forest" name; was admittedly created to avoid paying a penalty; and, over the course of just two years, received the substantial majority of Forest Group's assets and business, leading to Forest Group's dissolution. Now, Forest Drapery Hardware holds itself out as the continuation of Forest Group.

59. Forest Drapery Hardware is liable for Forest Group's debts to CBP as the successor-in-interest to, and/or alter ego of, Forest Group.

60. To date, Forest Drapery Hardware has not made any payments with respect to the unpaid duties, taxes, or fees, including accrued interest, owed in connection with the Entries. Nor has it paid any of the outstanding civil monetary penalty for the Entries.

61. Forest Drapery Hardware is accordingly liable to the United States to the same extent as Forest Group.

WHEREFORE, the United States respectfully requests that this Court grant judgment in its favor and against defendants in the total amount of $1,115,643.29 in unpaid AD and CVD duties for Entry Nos. DSV-30073115 and DSV-30099706, plus pre-liquidation interest pursuant to 19 U.S.C. § 1677g, and additional pre- and post-judgment interest, including but not limited to interest pursuant to 19 U.S.C. § 1505(d). The United States also respectfully requests that this Court grant judgment in its favor and against defendants for a civil penalty of $2,012,444.00, for violations of 19 U.S.C. § 1592(a), at a culpability level of negligence; and such other and further relief as may be just and appropriate.

**Jury Trial Demand**

Pursuant to Rule 38 of the United States Court of International Trade, the United States demands a trial by jury as to all issues so triable.

                                        Respectfully submitted,

                                        BRIAN M. BOYTON
                                        Principal Deputy Assistant Attorney General

                                        PATRICIA M. McCARTHY
                                        Director

By:    /s/ Justin R. Miller
        Justin R. Miller
        Attorney-In-Charge
        International Trade Field Office

Of Counsel:                                 /s/ Mathias Rabinovitch
SUZANNA HARTZELL-BALLARD     MATHIAS RABINOVITCH
Senior Attorney                           Trial Attorney
Office of the Assistant Chief Counsel     Department of Justice, Civil Division
U.S. Customs and Border Protection      Commercial Litigation Branch
8899 E. 56th Street                     26 Federal Plaza, Suite 346
Indianapolis, Indiana 46249             New York, New York 10278
                                               Tel.: (212) 264–0484 or 9230
TATE M. KEENAN                       *Attorneys for plaintiff*
Senior Attorney
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection
1500 Centre Parkway
Atlanta, Georgia 30344

Dated: July 10, 2024